UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTONIO LOPEZ-AGUILAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-02457-SEB-TAB |
| | ) | |
| MARION COUNTY SHERIFF'S DEPARTMENT, Marion County Sheriff JOHN R. LAYTON, in his official capacity and his individual capacity, Marion County Sheriff's Sergeant DAVIS, in his individual capacity, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| STATE OF INDIANA, | ) ) | |
| | ) | |
| Intervenor Defendant (Putative). | ) ) ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Interested Party. | ) | |

**ORDER ON STATE OF INDIANA'S MOTION TO INTERVENE (DKT. 53)**

Now before the Court is the State of Indiana's *Motion to Intervene for the Limited Purpose of Appeal*. Dkt. 53. On November 7, 2017, we entered final judgment in this lawsuit, Dkt. 50, by approving and entering the parties' *Stipulated Judgment*, Dkt. 37, for the reasons explained in our contemporaneously issued *Memorandum Order*. Dkt. 49. Nearly a month later, on December 4, 2017, the State of Indiana ("the State") filed a

1

*Motion for Extension of Time to Appeal*, Dkt. 54, which we granted, Dkt. 58, to permit full consideration of the instant *Motion to Intervene*. The parties have now been heard in opposition to the State's motion, Dkts. 59 (Plaintiff), 60 (Defendants), and the State has been heard in reply. Dkt. 61. Upon due consideration, for the reasons below, the State's motion is DENIED.

## **Standard of Decision**

Federal Rule of Civil Procedure 24 provides that a nonparty to an action, on timely motion, may intervene in the action under certain circumstances. Fed. R. Civ. P. 24(a), (b). The nonparty is entitled to intervention of right if a federal statute gives it "an unconditional right" to intervene, *id.* at (a)(1), or "if the [non]party has 'an interest' and is 'so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest, unless [its] interest is adequately represented by existing parties." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007) (quoting Fed. R. Civ. P. 24(a)(2)). As restated by the Seventh Circuit, under Rule 24(a)(2), Fed. R. Civ. P., the putative intervenor must "establish that[] (1) [its] motion[] w[as] timely; (2) [it] possess[es] an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the parties fail to represent adequately [its] interest." *Id.* (original alterations, ellipsis, quotations, and citation omitted). A district court has no discretion in determining whether the nonparty has satisfied these elements, apart from timeliness. *See id.* (all elements but timeliness reviewed *de novo*).

The nonparty may be entitled to permissive intervention where it "is given a conditional right to intervene by federal statute[,]" Fed. R. Civ. P. 24(b)(1)(A), or "where the applicant's claim and the main action share common issues of law or fact and where there is independent jurisdiction." *Ligas*, 478 F.3d at 775 (restating Fed. R. Civ. P. 24(b)(1)(B)). Permissive intervention by a "governmental officer or agency" is also authorized where "a party's claim or defense is based on" a statute, executive order, or other legal obligation flowing from either that is "administered by the officer or agency[.]" Fed. R. Civ. P. 24(b)(2). No matter the grounds on which permissive intervention is sought, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "This language suggests that intervention postjudgment—which necessarily disturbs the final adjudication of the parties' rights—should generally be disfavored." *Bond v. Utreras*, 585 F.3d 1061, 1071 (7th Cir. 2009).

## Analysis

In the course of approving the parties' Stipulated Judgment, we held that the Stipulated Judgment did not impose on Defendants obligations that were contrary to Indiana law. Mem. Order (Dkt. 49) 16–31. Specifically, we held that Indiana law did not require Defendants' cooperation with federal immigration detainers or removal orders. *Id.* We concluded that the only arguable locus for such a cooperation requirement, Section 4, Ind. Code ch. 5-2-18.2, prohibiting a unit of local government (like Defendants) from implementing a policy that "*limit*[*s*] or *restrict*[*s*] the enforcement of federal immigration laws to less than the full extent *permitted by federal law*[,]" Ind. Code § 5-2-18.2-4

(emphasis added), did not in fact require such cooperation "for three reasons: (1) the text of the statute does not require cooperation; (2) the [Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*,] does not permit such cooperation . . . ; and (3) the Fourth Amendment does not permit such cooperation . . . ." Mem. Order 31.

The State, however, disagrees with this interpretation, believing that Indiana law *does* require such cooperation, and seeks to intervene for the purpose of obtaining vacation of the Stipulated Judgment on appeal. Mot. Interv. (Dkt. 53) 4. The State takes issue, not with our approval as such of the Stipulated Judgment—as the State acknowledges, "this Court could theoretically approve the [Stipulated Judgment] regardless" of our statutory interpretation, Mot. Interv. 15, *see* Mem. Order 10–12 (bases for entry of consent decree)—but with the particular decisional path we took to reach that conclusion. "If [its] motion to intervene is not granted," the State argues, "a binding interpretation of Indiana statutes will be enshrined without ever hearing from the State[.]" Mot. Interv. 3.

The State contends it is entitled to intervention both of right and by permission. *Id.* We disagree. The State has no standing to seek either and both are untimely sought. Moreover, the State fails to satisfy the respectively applicable procedural standards.

**I. The State Must, But Cannot, Show Standing to Intervene**

No matter whether the State seeks intervention of right or by permission, the State concedes that it must show Article III standing to intervene. Mot. Interv. 4. Though the interaction of Rule 24 and Article III is not definitively settled, *see Bond v. Utreras*, 585 F.3d 1061, 1069–70 (7th Cir. 2009), the State's concession is well taken.

Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies[.]'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (quoting U.S. Const. art. III, § 1). One of the principal mechanisms for identifying justiciable cases or controversies is the doctrine of standing. *Id.* at 560. Defendants as well as plaintiffs must show standing to litigate. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (citing *Diamond v. Charles*, 476 U.S. 54, 56 (1986) (standing to defend on appeal)). Where, as here, a putative intervenor-defendant seeks to continue a case or controversy after one no longer exists between the original parties, "[the] intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted [or is sought] is contingent upon a showing by the intervenor that [it] fulfills the requirements of Art[icle] III." *Diamond*, 476 U.S. at 68; *also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661–62 (2013).

The "irreducible constitutional minimum" of standing is injury-in-fact traceable to the conduct complained of and redressable by a favorable ruling from a federal court. *Lujan*, 504 U.S. at 560. "Injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quotations and citations omitted). Traceability requires that the injury complained of be "fairly traceable to the challenged action . . . , and not the result of the independent action of some third party not before the court." *Id.* (quotations, ellipses, alterations, and citation omitted). Finally, redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Id.* at 561 (quotations and citation omitted). The burden of proving these three elements rests with the litigant invoking federal jurisdiction: here, the State. *Id.*

The State has not carried that burden. As for injury-in-fact, it is well established that a state has a legally protected interest, sufficient to confer standing, "'in the continued enforceability' of its laws that is harmed by a judicial decision declaring a state law unconstitutional." *Hollingsworth*, 133 S. Ct. at 2664 (quoting *Maine v. Taylor*, 477 U.S. 131, 137 (1986)). But, as the State acknowledges, neither the Stipulated Judgment nor our *Memorandum Order* approving it purports to invalidate any part of state law. State's Reply Br. Supp. Mot. Interv. (Dkt. 61) 2–4. Indiana law, specifically Section 4, Ind. Code ch. 5-2-18.2, remains just as enforceable today as it was the day before we approved the Stipulated Judgment.

Nevertheless, the State accuses our *Memorandum Order* of rendering its laws, presumably referring specifically to Section 4, "toothless," State's Reply Br. 2, and with having arrested the operation of "the substance of a statute," *id.*, such that the distinction between our order and an order invalidating the statute is a distinction without a difference. *See id.* 2–4. From the face of our order and the statutes interpreted, however, it is clear that this is not so. The distinction is entirely clear and important. The extent of our statutory holding as set out in the order was that no Indiana statute "require[s] [Defendants'] cooperation with removal orders, standing alone, or [immigration] detainers, standing alone." Mem. Order 30. The order was entirely silent as to other forms of state-federal cooperation the statutes may or plainly do require. *See, e.g., id.* at 16–17 (noting extent of plain cooperation requirement of Ind. Code § 5-2-18.2-3), 23 n.11

6

(noting extent of possible cooperation requirement of Ind. Code § 5-2-18.2-4). More fundamentally, however, as Plaintiff observes, Pl.'s Br. Opp. Mot. Interv. (Dkt 59) 6, the State's argument on this point elides the "patent" distinction between "assailing the validity of a statute" and "relying upon a special construction" of a statute. *Erie R.R. Co. v. Hamilton*, 248 U.S. 369, 371–72 (1919) (holding that, where "the plaintiff in error has not assailed the validity" of a treaty, "but on the contrary has claimed under an asserted construction of it, which was denied," Supreme Court review to be had only by writ of certiorari, not by writ of error).

Taking a different tack, the State attempts to recasts its interest "'in the continued enforceability' of its laws . . . ," *Hollingsworth*, 133 S. Ct. at 2664, as an interest in having its laws "*properly* enforced," State's Reply Br. 3 (emphasis added), that is, enforced only to the extent of, and only in accordance with, the views of its lawyers. *See id.* ("an obstacle to the *correct understanding* and enforcement of the State's laws" (emphasis added); "reversal will eliminate that *misreading* of the statutes at issue" (emphasis added)). The State does not, and cannot, point to any authority for this proposition that it has a legally protected interest, sufficient to confer standing, in defending its statutes from any judicial interpretation its lawyers deem undesirable or do not otherwise share. As Plaintiff suggests, Pl.'s Br. Opp. 5, to accept the State's argument on this point would establish the State's entitlement to one free call for the views of its attorney general whenever *any* court interprets *any* part of state law. To the contrary, however, "[a] litigant's desire to vindicate a position does not establish standing." *Greening v. Moran*, 953 F.2d 301, 305 (7th Cir. 1992).

7

To be sure, "States are not normal litigants for the purposes of invoking federal jurisdiction[,]" *Massachusetts v. E.P.A*, 549 U.S. 497, 518 (2007) (citing *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237 (1907)), and the State's "stake in protecting its quasi-sovereign interests . . . is entitled to special solicitude in our standing analysis." *Id.* at 520. But establishing the "correct understanding" of Indiana law, State's Reply Br. 3, is not a quasi-sovereign interest to be vindicated by Indiana's attorney general, but the quasi-sovereign function of the Indiana Supreme Court. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also Allen v. Wright*, 468 U.S. 737, 750 (1984) (standing problems are separation-of-powers problems), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 (2014).

A related observation defeats the State's charge that our *Memorandum Order* "enshrined" "a binding interpretation of Indiana statutes . . . without ever hearing from the State[.]" Mot. Interv. 3. Of course, our order neither did nor purported to do any such thing. This Court "lack[s] competence to rule definitively on the meaning of state legislation[.]" *Arizonans for Official English*, 520 U.S. at 48. Again, the "correct understanding" of an Indiana statute, State's Reply Br. 3, is definitionally supplied by the Indiana Supreme Court. *Reiser*, 380 F.3d at 1029. Exercises in state statutory interpretation by this Court, federal courts of appeals, and even state intermediate courts "are just prognostications[,]" *id.*, which become unnecessary once state law has received an authoritative construction. *Id.* Until the Indiana statutes at issue here receive such a construction, our interpretation of them binds no one (not even *this Court*, in a different

case) but the parties to this particular litigation. *Arizonans for Official English*, 520 U.S. at 57, 58 n.11, 66.

Finally, it is because the State in fact seeks, not a different judgment, but a different legal opinion, that the State's position suffers from the redressability problems identified by Plaintiff. Pl.'s Br. Opp. 7–10. This is so because the judicial relief the State seeks (vacation of the Stipulated Judgment on appeal) will, if at all, only contingently and collaterally remedy the asserted injury to the State's asserted interest. In this sense the State is in the same position as the appealing defendants in *1000 Friends of Wisc., Inc. v. U.S. Dep't of Transp.*, 860 F.3d 480 (7th Cir. 2017), and *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995 (7th Cir. 2000). *Kendall-Jackson* posed the question, "[W]hen a district judge enters an order creating obligations only for Defendant A, may the court of appeals alter the judgment on appeal by Defendant B when obligations imposed on A indirectly affect B?" The Court of Appeals answered in the negative, 212 F.3d at 998, focusing on the redressability element of the standing analysis. *Id.*

In *Kendall-Jackson*, Illinois liquor suppliers sued Illinois liquor distributors and the Illinois Liquor Control Commission, seeking an injunction against enforcement of an Illinois statute regulating the relationship between liquor suppliers and liquor distributors as violative of certain constitutional provisions. *Id.* at 995–96. The district court agreed with the suppliers, finding that the statute probably did violate the Constitution as alleged, and entered preliminary injunctions in the suppliers' favor against the Commission. *Id.* at 996. The distributors, but not the Commission, appealed, and a Seventh Circuit panel dismissed their appeal for lack of redressable injury. *Id.* at 1000.

The distributors' "injury [was] derivative rather than direct. Nothing in the injunctions impose[d] any disabilities on them, rather than the Commission." *Id.* at 998. The distributors responded that enforcement by the Commission of the statute would run to their benefit, but the court rejected that argument, finding that benefit would accrue to distributors, if at all, only collaterally to vacation of the injunctions, as the distributors could not assert control over or an interest in the Commission's enforcement decisions. *Id.*

Similarly, in *1000 Friends of Wisconsin*, an environmental group sued the United States and Wisconsin departments of transportation, seeking to set aside the federal agency's statutorily required environmental impact statement on a proposed state-federal highway project as inadequate under the Administrative Procedure Act. 860 F.3d at 481. The district court granted the requested relief and set aside the federal agency's findings, precluding it from distributing funds to the state for use in the project. *Id.* The state agency, but not the federal agency, appealed, which a Seventh Circuit panel dismissed for lack of redressable injury on the authority of *Kendall-Jackson*. *Id.* at 483. The court held that "Wisconsin cannot seek relief against a judgment that does not bind it[,]" and that "[i]t would be nothing but an advisory opinion for a court of appeals to discuss the adequacy of this environmental impact statement," where, even if the judgment were vacated and the environmental impact statement reinstated, the state agency would not necessarily benefit because lacking control over or interest in the federal agency's funding decisions. *Id.* at 482.

Though there are factual differences between the case at bar, on the one hand, and *1000 Friends of Wisconsin* and *Kendall-Jackson*, on the other, the relevant principle operates identically: a defendant does not have standing to appeal an order binding a different, nonappealing defendant which injures the appealing defendant only indirectly, and which, if set aside, will benefit the appealing defendant only collaterally or contingently. On appeal, the court of appeals may agree with the State and find that Indiana law did conflict with the Stipulated Judgment, yet still affirm entry of the Stipulated Judgment on the basis of *Perkins v. City of Chicago Heights*, 47 F.3d 212 (7th Cir. 1995), and its predecessor decisions. *See* Mem. Order 11 (citing cases). The State would have obtained the "relief" it sought without any change in any legal relations, that is, without winning actual legal relief. Conversely, the court of appeals may vacate the Stipulated Judgment on other grounds, reversing the judgment while leaving intact the legal opinion offensive to the State. In other words, it is not "likely, as opposed to merely speculative, that the [asserted] injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotations and citation omitted).

Thus, for lack of any injury-in-fact redressable by a favorable ruling, the State lacks standing, and its motion to intervene must be and therefore is denied.

## II. The State's Motion Is Untimely

Even assuming the State's standing to intervene, however, and regardless of whether intervention is sought of right or by permission, the State's motion to intervene fails on the basis of its untimeliness. Fed. R. Civ. P. 24(a), (b); *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 533–34 (7th Cir. 1987).

Timeliness is determined "from all the circumstances[,]" *City of Bloomington*, 824 F.2d at 534 (quotations and citation omitted), and "is not a word of exactitude or of precisely measurable dimensions." *Id.* (quotations and citation omitted). The Seventh Circuit has identified four factors to shape our consideration of "all the circumstances": (1) "the length of time the intervenor knew or should have known of [its] interest in the case;" (2) the extent of prejudice to the original litigating parties from the intervenor's delay;" (3) "the extent of prejudice to the would-be intervenor if her or his motion is denied; and (4) "any unusual circumstances." *Id.* (quoting *United States v. Kemper Money Market Fund, Inc.*, 704 F.2d 389, 391 (7th Cir. 1983) (quotations omitted).

We begin with the length of time the State knew or should have known of its interest in this case, which, to repeat, is asserted by the State to be its interest in a different construction of Indiana law than our *Memorandum Order* relied upon. The State maintains that it did not because it could not have known of this interest before entry of the order on November 7, 2017, and that filing a motion to intervene within the appeals period for the underlying judgment is timely. Mot. Interv. 6 (citing *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) ("Nor do we think the association's motion to intervene, even though not filed until the district judge had entered his final judgment, was untimely—assuming that all the association wants is to take an appeal . . . .")).

We disagree. The parties first submitted the Stipulated Judgment for our approval on July 10, 2017. Dkt. 37. Thus, it ought to have been clear to the State at *that* point that Defendants had no absolutely interest in defending an interpretation of Indiana law mirroring the State's view, namely, one that would prohibit, and potentially defeat, the

very obligations Defendants were then seeking to contract for. The State's position is unlike that of the intervenors in *Flying J* and *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977). There, postjudgment intervention was deemed timely because the intervenors' interests, or, more precisely, the failure of original parties to defend those interests, did not become clear until judgment was entered *and* the original parties failed to appeal. *United Airlines*, 432 U.S. at 394 ("[A]s soon as it became clear to the respondent[, intervenor below,] that the interests of the unnamed class members would no longer be protected by the named class representatives [following their failure to appeal from district court's denial of class certification], she promptly moved to intervene to protect those interests."); *Flying J*, 578 F.3d at 572 ("[T]here was nothing to indicate that the attorney general was planning to throw the case—until he did so by failing to appeal."). Here, by contrast, from the outset, everything indicated that Defendants were "planning to throw the case[,]" *Flying J*, 578 F.3d at 572, that is, they did not intend to advance or defend the State's preferred legal position, as of July 10, 2017, when the parties jointly submitted the Stipulated Judgment. The State's delay must therefore be measured from that date until the filing of the instant motion, December 4, 2017, a period of approximately five months, which is by any measure a substantial interval.[1]

We next address the extent of prejudice that would befall the original parties from the State's nearly five-month delay. In the postjudgment settlement context, where neither original party had reason to believe an appeal would be taken, *compare id.* at 573

---

[1] As Plaintiff points out, the federal government moved to participate in this case *three days* after the parties submitted the Stipulated Judgment for approval. Dkts. 38–40.

("There is no prejudice to Flying J, because it could not have assumed that, if it won in the district court, there would be no appeal."), especially in view of the "federal policy encouraging settlement[,]" *United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011), *compare Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) ("Security can hardly be said to be prejudiced by having to prove a lawsuit it chose to initiate . . . [as] it is the policy of this circuit to favor trials on the merits over default judgments."), the prejudice to the original parties is real and appreciable. The personal-capacity Defendants were dismissed with prejudice; reopening this lawsuit disturbs their repose. The official-capacity Defendants, caught between the Scylla of civil-rights plaintiffs and the Charybdis of the federal government's immigration enforcement apparatus, sought and secured a dependable explication of their obligations vis-à-vis both, confusion over which prompted Defendants' desire to settle in the first instance. Reopening this lawsuit plucks Defendants from the calm waters into which they have now sailed, returning them to the tumultuous straits they sought to escape when resolving this lawsuit. Plaintiff's sense of security in his person, and of vindication for his injury, will be wholly overthrown if the State's motion is granted. Finally, the parties obviously incurred various costs associated with this litigation, including in the course of settlement negotiations, and in part to avoid altogether costs relative to any appeal, *see* Dkt. 37, which economies the State's intervention will frustrate, if not defeat entirely. *See City of Bloomington*, 824 F.2d at 536 (noting "prejudice that the original parties suffer when another party seeks to intervene after a

settlement has been reached"; quoting *Jones v. Caddo Parish Sch. Bd.*, 735 F.2d 923, 935 (5th Cir. 1984)).

Regarding the issue of any prejudice befalling the State if its motion is not granted, the prejudice would be minimal or nonexistent. As noted above, our *Memorandum Order* embodies a statutory construction that binds only the original parties to this action. The State has numerous courts, state and federal, and numerous potential cases, open to it for the vindication of its preferred legal position, should it choose to engage in such litigation. If the State's position is not advanced in the context of this particular case, other avenues are available to it.

Finally, in terms of "unusual circumstances," particularly any "'other than lack of knowledge' for why [the State] was unable to intervene sooner[,]" *Id.* at 537 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977)), the State has pointed us to no such circumstances, and we perceive none.

Accordingly, given the untimeliness of the State's motion, the substantial prejudice to the parties if the motion were granted, the minimal prejudice to the State if it were not, and the lack of any unusual circumstances warranting our consideration, we conclude that the State's motion should be and therefore is denied on these grounds as well.

## III.  The State Is Not Entitled to Intervention of Right

Even assuming a timely motion for intervention of right brought by a litigant with standing, still the State's application fails. The State cites no federal statute giving it an "unconditional right" to intervene in this case, Fed. R. Civ. P. 24(a)(1), and is unable to

15

show an "interest" in the subject matter of this case the protection of which will be "impede[d]" or "impair[ed]" by denial of the motion. *Id.* at 24(a)(2).

"The 'interest' required by Rule 24(a)(2) has never been defined with particular precision." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). The interest required is "a 'direct, significant, and legally protectable' interest in the question at issue in the lawsuit." *Wisc. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (quoting *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985)). It must be "unique to the proposed intervenor[,]" *id.*, and "so direct that the applicant would have a right to maintain a claim for the relief sought." *Keith*, 764 F.2d at 1268 (quotations and citation omitted). Beyond these general principles, however, the inquiry as to whether an asserted interest is sufficient is so "highly fact-specific" that "comparison to other cases" is "of limited value." *Sec. Ins. Co.*, 69 F.3d at 1381.

The State asserts the interest of the United States in receiving state cooperation in immigration enforcement, Mot. Interv. 7, but that is clearly not an interest unique to it upon which it would have the right to maintain its own lawsuit. So too with the State's asserted interest in "the guidance provided to Indiana law enforcement by" the statutes interpreted by our *Memorandum Order*. *Id.* The State asserts finally an interest in its "ability to balance cooperation with federal law enforcement while shielding Indiana law enforcement from civil lawsuits which could arise from" our *Memorandum Order*, *id.*, but that interest will not be in the least impaired if intervention is not granted. The State (specifically, the General Assembly) remains free to reach and enact whatever policy judgments it deems appropriate. To the extent that this asserted interest is

16

indistinguishable from the State's asserted interest, noted above, in a particular interpretation of its statutes, the same conclusion follows here: every judicial interpretation of Indiana law is subject to authoritative revision and correction by the Indiana Supreme Court, and the State's ability to advance its legal position until such an authoritative declaration is made is not in the least impaired by the State's exclusion from this case.

Accordingly, for lack of a direct, significant, and protectable interest unique to the State which will be impaired by the denial of its motion to intervene, the State is not entitled to intervention of right. Its motion for intervention of right is therefore denied on that ground.

**IV. The State Is Not Entitled to Permissive Intervention**

Similarly, even assuming a timely motion for permissive intervention brought by a litigant with standing, still the State's application fails. The State cites no federal statute giving it a "conditional right" to intervene in this case, Fed. R. Civ. P. 24(b)(1)(A), does not have a "claim or defense that shares with the main action a common question of law or fact[,]" *id.* at 24(b)(1)(B), and is not a "governmental officer or agency . . . ." *Id.* at 24(b)(2). Moreover, its late postjudgment intervention would "unduly delay and prejudice" the original parties' rights. *Id.* at 24(b)(3).

The State has no "claim or defense" to Plaintiff's suit because the State, as already noted, does not wish to litigate the action, but to erase a disfavored legal rationale from the record. If that were done (for example, if this Court were simply to vacate that portion of our *Memorandum Order* to which the State objects but nevertheless affirm approval of

17

the Stipulated Judgment on alternate grounds), then the State would wish "'to have nothing to do'" with this lawsuit after that. *Hughes v. Kore of Ind. Enter., Inc.*, No. 1:11-cv-1329, 2013 WL 312868, at *1 (S.D. Ind. Jan. 25, 2013) (quoting *Tech. Licensing Corp. v. Thomson, Inc.,* 684 F.Supp.2d 1206, 1207 (E.D. Cal. 2010)). "This is not the purpose of intervention . . . ." *Id.*

Nor, clearly, is the State a governmental "agent or officer" entitled to intervene under Rule 24(b)(2), Fed. R. Civ. P, and cannot be said to "administer" the entire body of its law, contrary to its position.

Finally, for the same reasons as noted above as to the timeliness question, the prejudice to the original parties is clear.

For these reasons, we conclude that permissive intervention is not warranted. The State's motion for permissive intervention is therefore denied.

## **Conclusion**

Because the State does not have standing to intervene, has not timely filed its motion, and otherwise fails to satisfy the applicable standards under Rule 24, Fed. R. Civ. P., the State's motion to intervene is hereby DENIED.

IT IS SO ORDERED.

Date: 1/5/2018

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas M. Fisher
INDIANA ATTORNEY GENERAL
tom.fisher@atg.in.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Winston Lin
INDIANA ATTORNEY GENERAL
winston.lin@atg.in.gov

Jan P. Mensz
ACLU OF INDIANA
jmensz@aclu-in.org

Diana Lynn Moers Davis
INDIANA ATTORNEY GENERAL
diana.moers@atg.in.gov

Donald Eugene Morgan
OFFICE OF CORPORATION COUNSEL
donald.morgan@indy.gov

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Erez Reuveni
U.S. Department of Justice
erez.r.reuveni@usdoj.gov

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov